# Commonwealth *v.* Hiram Bates and Henry D. Shaw, Appellants.

*Evidence—Proving a negative—Shifting the burden.*

Where a party has the burden of proving a negative and the subject-matter lies peculiarly within the knowledge of the opposite party, full proof is not required, it is considered sufficient if he offers such evidence as, in the absence of counter testimony, would afford ground for presuming that the allegation is true.

*Criminal law—Statute of limitations—Burden of proof.*

When an indictment is found more than two years after the perpetration of the offense, it is incumbent on the commonwealth to show that the case is within the exception of section 77, act of May 31, 1860, P. L. 395, but the most that can be required of the commonwealth is to furnish evidence of facts from which, in the absence of evidence on the part of the defendant as to his residence, a jury may fairly infer that he was not an inhabitant or usual resident of the state during the period in question.

The commonwealth having proved that the defendants were strangers in the vicinity; that immediately after the perpetration of the offense they fled, and that they could not be found after due and reasonable search, could hardly be expected to prove more in the first instance. Whether, under all the circumstances, diligent search was made, was a question of fact for the jury.

Blackman v. Com., 124 Pa. 578, followed.          . · :

*Criminal law—Identification—Charge of the court.*

A jury is properly instructed on the question of identification in this language: "You are to determine whether the testimony shows, beyond a reasonable doubt, that the accused were the persons engaged in the transaction," and which after defining what was meant by the terms concludes generally: "You are to find from all the evidence whether the commonwealth has established their guilt beyond a reasonable doubt."

Argued Dec. 11, 1895. Appeal No. 41, Nov. T., 1895, by defendants, from sentence of O. & T., Montgomery County, Oct. Sessions, 1895, No. 55. Before RICE, P. J., WILLARD, BEAVER, REEDER, WICKHAM, McCARTHY and ORLADY, JJ. Affirmed. REEDER, J., dissents.

Defendants were convicted on October 11, 1895, of larceny, and receiving stolen goods and of conspiracy.

The indictments upon which they were convicted charged the several offenses as having been committed on May 6, 1893, and true bills were found on October 8, 1895, being more than two years from the time of the commission of the offenses charged in the indictments. Warrants were sworn out on May 6, 1893, and on January 15, 1894, defendants were found in the custody of the officers in Philadelphia, a detainer lodged, and on September 25, 1895, the defendants were brought to Norristown for trial.

Defendants' points were as follows:

First. That the offense of larceny for which (except the statute of limitations) a conviction might lie under a bill charging robbery—that that offense, and the offenses charged in the indictments Nos. 53 and 54, are barred by the statute of limitations. *Answer :* I cannot so charge under this testimony. It is a matter for the jury. [1]

Second. That it is for the commonwealth to prove that the prisoners have not been inhabitants, or usual residents, within the state during the period of two years after May 6, 1893; that there is no evidence in this case submitted by the commonwealth, or otherwise, which will warrant the jury in finding that the defendants have not been inhabitants, or usual residents, of the state during the period to which the prosecution of the offenses is limited. *Answer :* We cannot take the case from the jury on the ground that the offenses as charged are

barred by the statute of limitations.    There is evidence here
on which the jury must pass and determine whether the statute
of limitations under the facts as they shall find them, is a bar
to conviction in this case. [2]

The trial judge, SWARTZ, P. J., charged the jury inter alia
as follows :

[Now let us apply the testimony to these various charges.
We will drop out robbery as stated, and will take up the lar-
ceny.    Was there a larceny committed under the facts and
under the testimony as shown before you?    If you find that
John H. Jones, when he took the $2,500, laid them down upon
the table, as he says he did, and that then the money was
picked up by Shaw, one of the defendants, and put in his
pocket without his consent, and with intent to appropriate it
to Shaw's own use, then that was a felonious taking of the per-
sonal goods of another, such as is defined in the act, and the
offense is defined to be larceny.    But suppose you find that
when John H. Jones brought the $2,500 there, he brought
them there and gave them into the hands of Shaw—and when
I say the word Shaw I do not wish to intimate at this time
that they were the persons who were there ; I leave that for a
later consideration ; when I endeavor to show you what the
offenses are and apply the testimony we are not to determine
who these men were that were in the house that day; that
part we will drop out for the present.    No matter who these
men were that were in the house; suppose Mr. Jones came
there and laid down the $2,500 or put them into the hands of
one of the persons who was behind the table, and that person
put it in his pocket and retained it and refused to give it up,
then it may still be larceny.    Why?    Because if you find that
the purpose and object of Jones in laying down the money or
giving it into the hands of the person that was there was
simply to show that he was a person of financial standing; if
that was his only object in putting the money in the hands of
the person who was there so that he could count the money
to satisfy himself that Jones had produced $2,500, and not-
withstanding the money was taken by one of the parties, it
would be larceny.    It would be constructive larceny, because
if you find that Jones under those circumstances gave the pos-
session of the money to the person who was there, but did not

mean to part with the property, then it would be constructive larceny, because constructive larceny is defined to be that where one gives the possession of his property to another without meaning to give the title or the ownership or without meaning to have the title pass out of him, still wishes to maintain his right and ownership of the property, and the party who receives it feloniously appropriates it to his own use and carries it away.] [3]

Take a third case. Suppose, however, you find that the man Jones and the men who may have been in this house—whoever they may have been—were there for the purpose of carrying on a game of hazard, for the purpose of gambling; if that was their object and purpose and that was all—simply sat down or stood around this table for the purpose of risking their money, hazarding their money at game of chance, and Mr. Jones lost his money by reason of a turn of the cards being against him, then it would not be larceny. It would not be conspiracy. It would be no offense that you would have cognizance of in this court at this time.

As I said, gentlemen, the offense that was perpetrated, if any, will depend upon your finding of the facts. You will remember the testimony of Mr. Jones; he says—at least that was his last statement—that when he went in with his $2,500 he laid them down on the table and they were then picked up by one of the parties who put them in his pocket. If you believe that testimony, then if the taking was done with intent to feloniously appropriate the money of Jones and carry it away, it was larceny.

But if, on the other hand, you find that the $2,500 were put there in a game of chance with cards, that he intended to risk the $2,500 on a bet or on a venture with the parties who were there, then it was nothing but a gambling scheme on his part as well as on their part as to who would gain by the turn of the card. But he says that all he was to do was to bring the $2,500 for the purpose of showing that he was a trustworthy man or as evidence of his good faith or of his financial ability. If that was all, and he brought the money for that purpose and that only, and it was then taken by one of the parties, taken feloniously to appropriate to his own use, it was larceny.

[Now then let us apply the facts as to the conspiracy. As

I said, if there was a conspiracy on the part of the persons who were there that day to falsely and maliciously agree to cheat and defraud Mr. Jones out of his money, then you would be justified in finding that the parties who perpetrated this offense were guilty of a conspiracy. If the paraphernalia that was there—the devices, no matter what they were, whether cards or blocks or squares or cloth or books or drafts, no matter what it may have been; if the sole purpose and object was to use it as a scheme or a trick whereby they could carry out their conspiracy to obtain his money, then the gambling part drops out and you will find that this was simply a conspiracy and that the cards and the drafts and plans that were there and the cloth that may have been there, was simply a part of the device, part of the scheme, and part of the conspiracy to obtain the money from him. Therefore you will say whether the persons who obtained that money that day did engage in a plan, scheme or device to defraud maliciously, just as this act says, falsely, maliciously conspire and agree to cheat and defraud Mr. Jones.] [3]

As to the third bill, I think that perhaps may easily drop out of this case; and yet if you should find that these men who were in Pottstown that day had nothing but an ordinary gambling arrangement, that they hired the room for purposes of gambling and that the game that they were carrying on was the ordinary game of gambling, enticing people in just like any gambling place would where gambling is carried on, you may convict them of gambling, keeping a gambling house, etc; but if this paraphernalia was not for the purpose of drawing people in to gamble and hazard their money at a game of chance, and if the whole scheme was simply a device by which they could carry out a conspiracy of stealing money or committing a larceny; if that was the whole object and purpose of the paraphernalia that was used that day, then it would not be what we understand ordinarily as a gambling house nor a place where people are enticed to gamble. And if you find that the object and purpose of hiring this room was not to gamble but to carry out a conspiracy or to succeed in getting the money of Mr. Jones by fraudulent practices such as I have explained to you by a conspiracy, falsely and maliciously conspiring and agreeing to cheat him, or if the purpose was to steal his money,

to commit a larceny, and that was the object of these devices and plans that may have been there, then they drop out as a gambling scheme and you would say not guilty on·that count, because you would find this was not a gambling house and was not set up for that purpose.

[Let us go one step farther. It is said that whoever perpetrated the crime, if any was perpetrated that day, cannot be convicted at this late day because the offense is barred by the statute of limitations. Whether it be larceny or conspiracy the law says that offenses of that character shall be tried in a court of justice, or at least a bill of indictment should be found, within two years from the time the offense was perpetrated. According to all the evidence, this offense, if any, was perpetrated on the 6th day of May, 1893, and these bills were not found until October 8, 1895. That is, this bill was found more than two years after the offense was perpetrated, and it is so shown upon the face of the bills. Therefore, the commonwealth cannot ask at your hands a conviction unless it also shows that the case comes within the exception provided for by the act of assembly. As the case stood when we started out in this trial, it was the duty of the commonwealth before they could ask a conviction at your hands to show that this case does not fall within the ordinary case where the bar intervenes in two years, but that it falls within the exception given by the act of assembly, which reads as follows; after stating that it shall require two years or five years, according as the conditions may be, the following provision is put in the act of assembly : " Provided, however that if the person against whom such indictment shall be brought or exhibited shall not have been an inhabitant of this state, or usual resident therein, during the said respective terms for which he shall be subject and liable to prosecution as aforesaid, then such indictment shall, or may be, brought or exhibited against such person at any period within a similar space of time or during which he shall be an inhabitant of or usual resident of this state." That is the exception. Therefore, if the commonwealth wants to ask at your hands a conviction, it must show that the defendants on trial were not tried because they were not inhabitants of the state or not usual residents therein two years immediately prior to the finding of this indictment. Has

the commonwealth proved that? Or has it proved enough to make out a prima facie case, so that you can find that the evidence is with the commonwealth? What has the commonwealth proven? That immediately after this offense was perpetrated or after the transaction, whatever it may have been, that warrants were sworn out; that the defendants or the parties, whoever they were, at Pottstown, who were guilty of taking the money from Jones, whatever the offense may have been, if any, left the town; that search was made for them through the town by the officers. Mr. Jones himself the next day, or at least a day or so afterwards, if not the next day, went out into the country where he had some reason to believe they might be found if they had strayed from the railroad, and made search there; that officers went to Reading, presuming, no doubt, whatever the reason may have been, because the Reading Railroad station was at Pottstown, they went to Reading. It has also shown by some of the witnesses, who testify—you will remember the testimony if I am mistaken— that telegrams were sent from Pottstown. Therefore, has the commonwealth made a reasonable effort to ascertain whether the parties who perpetrated the offense were usual residents in this state, or were inhabitants thereof? Did these defendants, who are now upon trial, have at that time a usual residence in the state, or were they inhabitants of the state? You will remember that the persons who were there upon that day, according to the testimony of Jones, gave but little explanation as to their whereabouts. One of them said, however, that he was a son of Samuel K. Anders, then a commissioner of the county of Montgomery, president of the Peoples National Bank, of Norristown, and that his father had asked him to call upon Mr. Jones and give him his compliments; that he pretended to be a son of Samuel K. Anders; that the other man who was in the room claimed that he was an agent of a branch office of some concern or lottery company, the main office of which was in Philadelphia. Was there any other evidence or clue by which the officers, or Jones, or those in pursuit of the persons who were in that room, were enabled to ascertain the whereabouts of these men if they were usual residents of the state, or inhabitants thereof?

If you find from this testimony that the commonwealth has

used due diligence to ascertain their whereabouts, has used due and reasonable diligence in ascertaining where they could be found, then I charge you that the commonwealth has made out a prima facie case, and as long as that stands you may find that this case comes within the exception of the statute that I have just read, and that the two years limit would not bar this case.] [4]

.[Now, then, what else is there in this case? The important, or at least one of the most important, considerations in the case, is the identification of the person.] [5] . . . .

That is all the testimony that I remember upon this point that will assist you in determining whether the defendants here upon trial are the persons who were at Pottstown on the 6th of May, 1893, and who engaged in the device or scheme or lottery or whatever you may find it to be, whereby Mr. Jones lost his $2,500. The testimony is entirely for you. I cannot assist you in determining where the truth lies. [You are to determine whether the testimony shows beyond a reasonable doubt that the accused are the persons who were engaged in the transaction described by Mr. Jones.] [5]

. [As I said, you must find the accused guilty beyond a reasonable doubt before you can convict them. Reasonable doubt means what the words indicate. It must be something substantial, a reasonable doubt. It is not required that you find that the identification is proved beyond all possibility of doubt. There is no standard or proof of that degree required in a criminal court. You are to find from all the evidence whether the commonwealth has established their guilt beyond a reasonable doubt.] [6]

. Now then I shall leave these cases with you under this instruction. Two of these bills charge a misdemeanor, the bill charging conspiracy and the bill charging the keeping of a gambling house. If you acquit upon those bills you will pass upon the costs. You can put them upon the defendant, or you can put them upon the prosecutor, naming him, or you can divide them between the defendant and prosecutor, as you see fit, or put them upon the county. ,

The other bill charging larceny and receiving stolen goods is a felony and you say nothing about the costs, no matter what your verdict may be upon that bill. In charging you upon the

costs I do not mean to say that you will, or will not reach that stage of the inquiry. I call your attention to the matter of costs so that if you reach it you may act intelligently upon it. The matter is entirely with you.

*Errors assigned* were, (1–2) answering the defendants' points; (3–6) errors alleged in the judge's charge, reciting same; (7) in not charging the jury to acquit.

*Irvin P. Knipe*, of *Wanger & Knipe*, for appellants.—The commonwealth failed to prove sufficient facts to toll the statute of limitation or to put the burden upon defendants, proving they were not within the exception thereto. Citing section 77, act March 31, 1860, P. L. 395.

The construction of this statute is to be liberal in favor of the defendant: Commonwealth v. Haas, 57 Pa. 445 ; Wharton on Criminal Pleading and Practice, page 316.

Blackman v. Commonwealth, 124 Pa. 578, if read in the spirit in which the statute is to be treated, is an authority in favor of defendants: See also Graham v. Commonwealth, 51 Pa. 255.

*John M. Dettra*, *James B. Holland*, district attorney, with him for the appellee,—relied on Blackman v. Commonwealth, 124 Pa. 578.

It is further urged that the court had so charged the jury, as in fact led them to the conclusion that it was not material as to whether the commonwealth had used due diligence in ascertaining the whereabouts of the defendants, and the appellants quote one short sentence of the charge of the court to support this argument.

An examination of the entire charge shows that the court left the question to the jury as to whether the commonwealth had used due diligence, and as to the idenity of these defendants, after which the jury was duly instructed as to reasonable doubt.

An examination of the entire charge shows that the law was properly laid down, the questions for the jury were fairly submitted, and in fact the defendants very leniently dealt with by the court in view of the strong and conclusive evidence against them.

OPINION BY RICE, P. J., February 20, 1896:

The indictment in this case was returned a true bill on October 8, 1895. The alleged offense was committed on May 6, 1893, in the borough of Pottstown. The commonwealth introduced evidence tending to show that the defendants rented a room for their criminal purpose, but were not usual residents of the borough; that immediately after the commission of the offense a warrant was sworn out and placed in the hands of an officer; that search was made in the vicinity, and that messages were sent to Philadelphia, Pittsburg, Reading and other places, all without result. In January, 1894, the prosecutor and the officers in charge of the case received information—which was true—that the defendants were in Philadelphia, under arrest. The evidence upon this subject is not very clear, but it would seem that they were under arrest on another charge. The defendants introduced no evidence as to their residence or whereabouts during the period between May 6, 1893, and January, 1894.

Our statute, after prescribing the time within which indictments must be found—which in this case was two years—makes this exception : " provided, however, that if the person against whom such indictment shall be brought or exhibited shall not have been an inhabitant of this state or usual resident therein during the said respective terms for which he shall be subject and liable to prosecution as aforesaid, then such indictment shall or may be brought or exhibited against such person at any period within a similar space of time during which he shall be an inhabitant of or usually resident of the state."

When an indictment is found more than two years after the perpetration of the offense, it is incumbent on the commonwealth to show that the case is within the exception, and so the learned judge clearly instructed the jury. But the exception was introduced into the statute for a purpose which is not to be defeated by construing it to require the commonwealth to do an impossible thing. There is only one way in which it could be conclusively shown that a criminal was absent from the state during the statutory period, and that is by proving that he was in some other state or foreign country. But, in most cases, where he has fled to avoid arrest, and conceals himself, it would be impossible to furnish such proof. It was to

meet such cases, that is, cases of flight and concealment, that the proviso was introduced into the section, and it is fair to conclude that the legislature did not intend to require the commonwealth to furnish that full and conclusive proof of non-residence which the defendant, by his act, has put it out of the power of the commonwealth to furnish. The most that can be required of the commonwealth is to furnish evidence of facts from which, in the absence of evidence on the part of the defendant as to his residence, a jury may fairly infer that he was not an inhabitant or usual resident of the state during the period in question. It is sometimes said that, when the subject-matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true unless disproved by that party. This is a principle not unknown in criminal evidence, but it is not a rule of universal application, and we do not hold that it applies here. It is a rule, however, of very common application in criminal as well as in civil cases that where a party has the burden of proving a negative, and the subject-matter lies peculiarly within the knowledge of the opposite party, full proof is not required, but such as renders the existence of the negative probable is in some cases sufficient to change the burden: 1 Wharton, Ev., 368. A large number of such cases will be found collected in 1 Greenleaf, Ev., 78, concerning which the learned author says : " In these and like cases, it is obvious that plenary proof on the part of the affirmant can hardly be expected; and therefore it is considered sufficient if he offers such evidence as, in the absence of counter testimony, would afford ground for presuming that the allegation is true."

The case of Blackman v. Commonwealth, 124 Pa. 578, well illustrates the general principle, and is exactly in point. It was there held that where the commonwealth had proved the commission of the offense, the issuance of a warrant for the arrest of the defendant, and his flight, his absence from his usual place of residence in the county and the efforts to learn his whereabouts with a view to his arrest, a prima facie case had been made out. Said Chief Justice PAXSON : " Must the commonwealth go further and prove a negative, that the defendant was not an inhabitant or resident of the state until within two years of finding the indictment ? While he was so effectually con-

cealed that the officers could not find him, must the prosecution prove that his concealment was beyond the borders of the state? We think not. It would place an unreasonable burden upon the commonwealth; it would require proof of a fact not within the knowledge of its officers, and what is peculiarly within the knowledge of the defendant."

There is one feature of the case cited worthy of notice, and that is that under the ruling in Commonwealth v. Ruffner, 28 Pa. 259, the statute had run several months before the defendant fled. We make no point of this however; the defendant did abscond before an indictment could be found.

It is argued that this case is distinguishable from the case cited, because there is no evidence that the defendants absented themselves from their usual places of residence, and there is uncontradicted evidence that they were in Philadelphia from January, 1894, until the time of trial. So far as the present question is affected, we cannot see that there is any real distinction between the case of one who flees from his known place of residence to escape punishment for his crime, and the case of one who commits a crime in a place where he is a stranger, and flees. If he has a fixed and known habitation, diligent search would include inquiry there. But, if it is unknown, if he is a stranger in the community, it certainly cannot be that the commonwealth is required to ascertain and prove where his residence was, and that he absented himself from it.

The commonwealth having proved that the defendants were strangers in the vicinity; that immediately after the perpetration of the offense they fled, and that they could not be found after due and reasonable search, could hardly be expected to prove more in the first instance. Whether, under all the circumstances, diligent search was made, was a question of fact for the jury, and it was fairly submitted to them by the court.

Nor do we think that the fact the defendants were found in Philadelphia under arrest, raised a presumption that they were inhabitants and usual residents of that city during the eight months preceding. If they were it would have been an easy matter for them to show; whereas it would be impossible for the commonwealth to give conclusive proof to the contrary in the first instance. There is as much evidence that Pottstown,

whence they absconded, was their residence, as that Philadelphia was.

Considerable stress is laid on the fact which affirmatively appears that the defendants were in the state and known to be so for the whole period between January, 1894, and October, 1895, when the indictment was found. But the question for the court and jury to decide was not, whether there was undue delay in preferring an indictment, but whether it was found within the statutory period, and they had no authority to lengthen or shorten it according to their notions of what would be due diligence under the circumstances of the particular case. If the statute began to run on the date of the commission of the offense, the prosecution was barred. But if it did not begin to run until the time when, according to the evidence and the implied finding of the jury, the defendants became inhabitants and usual residents of the state, it was not barred. This presents a legal question to which the same answer must be given at all times and under all circumstances, and the question whether under the particular circumstances of the case the finding of the indictment was unreasonably delayed does not enter into it.

If the defendants had successfully concealed their whereabouts for two years, and then had returned to the state, the statute would not have barred the prosecution until two years after their return. But, if the jury were warranted in finding, as we think they were, that the defendants were not inhabitants and usual residents of the state during the eight months immediately following the commission of the offense, then during that portion of the statutory period of limitation they were not accessible to justice, within the spirit and intent of the law. As in the case of one who absents himself for the whole period, so in the case of one who absents himself for a portion of the period immediately following the offense, the statute does not begin to run until his return.

The court having instructed the jury fully as to the nature of the charge, and the evidence adduced in support of it, and as to the statute of limitations and what was incumbent on the commonwealth to prove in order to bring the case within the exception, then passed to the evidence as to the identification of the defendants, which, as the learned judge properly said

was one of the most important questions in the case, and concluded upon this branch by saying: "You are to determine whether the testimony shows, beyond a reasonable doubt, that the accused are the persons who were engaged in the transaction described by Mr. Jones." Then, after defining what was meant by the terms, he concluded generally by saying: "You are to find from all the evidence whether the commonwealth has established their guilt beyond a reasonable doubt." He did not say that the jury must convict if they had no reasonable doubt of the defendants' guilt; and it is not to be supposed that they forgot their previous instructions upon the statute of limitations; especially as they were reminded of their duty as to that feature of the case by the answer to the defendants' second point.

Judgment affirmed.

REEDER, J. dissents.