## Commonwealth *v.* Wilcox, Appellant.

*Criminal law—Conspiracy—Statute of limitations—Act of March 31, 1860, P. L. 427.*

1. Where two persons are indicted for conspiracy, and it appears that at the time the conspiracy originated in Pennsylvania both were citizens and residents of the state of New York, and that neither of them were ever citizens of Pennsylvania, nor maintained a residence here, nor were ever inhabitants of this state, such persons are not en-

titled to the protection of the two years' limitation provided by sec. 77 of the Criminal Procedure Act, but are within the proviso of the same section which enacts that the protection of the limitation shall not be extended to anyone who during the period of two years following the commission of the offense " shall not have been an inhabitant of this state, or usual resident therein."

2. The provision of sec. 77 of the Act of March 31, 1860, P. L. 427, was not intended to discriminate and does not discriminate between citizens of a foreign state, and citizens of Pennsylvania.

*Criminal law—Conspiracy—Publication of false statement as to bank— Banks and banking.*

3. A conviction of two persons for conspiracy to cheat and defraud the depositors of a bank will be sustained, where it appears that the defendants organized and were the owners of the bank in question, that they had inserted an advertisement over their own name in a newspaper to the effect that the capital of the bank was $25,000, when in fact it was only $10,000; that the advertisement was paid for by the bank, and that it was kept standing in the newspaper until shortly before the bank closed its doors, when it was withdrawn by direction of one of the defendants.

Argued Nov. 10, 1913.    Appeal, No. 207, Oct. T., 1913, by defendants, from judgment of Q. S. Potter Co., March Sessions, 1912, No. 28, on verdict of guilty in case of Commonwealth v. George B. Wilcox, J. B. Jones, Appellants, and W. L. Norton.    Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Indictment for conspiracy.    Before ORMEROD, P. J.

From the record it appeared that defendants were indicted in the court below charged with having conspired and agreed together to cheat and defraud Charles A. Reynolds out of $300 by willfully, maliciously and falsely conspiring to circulate a statement in the Genesee Times that the Genesee Banking Company had a capital of $25,000, for the purpose of obtaining the moneys of Charles A. Reynolds, the said defendants being members of a partnership doing business as the Genesee Banking Company, and that the statement that the Genesee

Banking Company had a capital of $25,000 was false and untrue.

At the trial when Reverly L. Hurd, the publisher of the Genesee Times, was on the stand he was asked this question:

"Q. Did you afterward insert an advertisement in the Genesee Times? A. I did. Q. How did you come to put that advertisement in, at whose solicitation?"

Objected to as incompetent and irrelevant unless at the solicitation of the two defendants on trial and within the period laid in the indictment.

It must be one of the defendants.

Objection overruled.

"A. Well, now, I think I went to Mr. Johnson first and asked him for an ad, and I think some time later in the week of the first or second week the bank was opened that W. L. Norton brought a cut on a little block of wood—a piece of metal on top of that had a picture on it and I think with that came some copy; that was the way the advertisement started in my paper, I think."

Mr. Swetland: I ask that this testimony be stricken out as it cannot possibly affect these two defendants on trial, Mr. Jones and Mr. Wilcox.

Motion to strike out refused. To which ruling by the court counsel for the defendants except and at their request bill is sealed. [11]

Defendants presented this point:

5. The uncontradicted testimony in the case being that for a long time prior to the alleged offense the defendants were residents of the state of New York in the village of Wellsville, a short distance from Genesee, where the defendant, George B. Wilcox, still resides; that the defendant, J. B. Jones, removed to the state of Oklahoma some time in the latter part of the year 1907, where he resided at the time of the alleged offense; and both defendants being at their permanent residences engaged openly and publicly in business. The com-

monwealth has failed to show that the defendants are within the exception to sec. 77 of the act of March 31, 1860, and they should be acquitted. *Answer:* Refused, to which counsel for defendants except. Exception. [5]

Verdict of guilty, on which the court sentenced the defendants to pay a fine of $500 and to undergo imprisonment in the Western Penitentiary for a period not to exceed two years, and not less than nine months.

*Errors assigned* among others were (1, 2) in overruling motions to quash the indictment and arrest the judgment; (5) above instruction, quoting it, and (11) ruling on evidence, quoting the bill of exceptions.

*W. K. Swetland,* with him *A. N. Crandall,* for appellants.—The indictment was insufficient: Hartmann v. Com., 5 Pa. 60.

Where an attempt to commit a crime is alleged, the crime attempted must be described with as much particularity as in a charge for the crime itself: Com. v. Brosk, 8 Pa. Dist. Rep. 638; Com. v. J.          , 21 Pa. C. C. Rep. 625; Mears v. Com., 2 Grant, 385; Com. v. Weiderhold, 112 Pa. 584; Randolph v. Com., 6 S. & R. 398.

The prosecution was barred by the statute: Graham v. Com., 51 Pa. 255; Com. v. Smith, 19 Pa. C. C. Rep. 397; Com. v. Bates, 1 Pa. Superior Ct. 223.

We most earnestly urged in the court below that when the prosecutor and the commonwealth's officers knew at all times the whereabouts of these defendants residing so closely to the state of Pennsylvania, at least Mr. Wilcox, that the proviso in sec. 77 of the penal code should be construed not to apply in this case and that any other construction placed upon it would render it unconstitutional and in violation of art. IV. sec. 2, of the constitution of the United States, and also in violation of the fourteenth amendment thereof: Blake v. McClung, 172 U. S. 239; Slaughter

House Cases, 83 U. S. 36; Yick Wo v. Hopkins, 118 U. S. 356; Sayre Boro. v. Phillips, 148 Pa. 482; Chemung Canal Bank v. Lowery, 93 U. S. 72.

There was not sufficient evidence to submit to the jury either as to conspiracy or circulating false statement: Com. v. Bartilson, 85 Pa. 482.

*Harry W. Nelson*, district attorney, with him *A. S. Heck*, for appellee.—The indictment was sufficient: Com. v. New Bethlehem Boro., 15 Pa. Superior Ct. 158; Com. v. Brown, 23 Pa. Superior Ct. 470; Com. v. Moyer, 52 Pa. Superior Ct. 548.

The case was not barred by the statute: Blackman v. Com., 124 Pa. 578.

The exception in the statute of limitation of the time of the defendants' absence from the state applied only to the one who was a resident of the state when the action accrued, and does not apply to a nonresident: Fike v. Clark, 55 Mo. 105; Hyman v. Bayne, 83 Ill. 256; Rockwood v. Whitney, 118 Mass. 337; Chemung Canal Bank v. Lowery, 93 U. S. 72; Rothermel v. Meyerle, 136 Pa. 250; McKane v. Durston, 153 U. S. 684.

OPINION BY HEAD, J., February 20, 1914:

The bill of indictment upon which the defendants were tried and convicted was found by the grand jury December 17, 1912. It charged a conspiracy to cheat and defraud. Assuming the alleged conspiracy was a continuing one, it could not have existed later than May 20, 1910. On that day the banking company closed its doors and the defendants thereafter performed no act which could in any way have kept alive the alleged conspiracy. Whatever loss the prosecutor and others may have sustained by reason of the wrongful acts of the defendants was then completed. It is contended then by the defendants that, giving to the commonwealth the benefit of every doubt as to the date when the statute of limitations began to run, that date could not be later

than May 20, 1910, considerably more than two years before the finding of the bill. If the case of the defendants be within the general enacting clause of sec. 77 of our Criminal Procedure Act, their contention is sound, and the prosecution was barred by the statute. If, on the other hand, the defendants belong to the class created by the proviso to the section referred to, then they cannot claim the protection offered by the first clause of the section to those not within the proviso.

Section 77 referred to, after providing that all indictments for misdemeanor of the character of conspiracy "shall be brought or exhibited within . . . . two years next after such misdemeanor shall have been committed," contains the following proviso: "Provided, however, that if the person against whom such indictment shall be brought or exhibited shall not have been an inhabitant of this state or usual resident therein during the said respective term for which he shall be subject and liable to prosecution as aforesaid, then such indictment shall and may be brought or exhibited against such person at any period within a similar space of time during which he shall be an inhabitant of or usual resident within this state." In the preparation of the indictment, the pleader, following the practice approved in Blackman v. Com., 124 Pa. 578, averred, "And since the commission of the said offense aforesaid, the said defendants have not been inhabitants of the state of Pennsylvania or usual residents therein." The conceded facts appear to be that the two defendants convicted were never citizens of Pennsylvania; never maintained a residence therein; and were never inhabitants of said state. At the time the conspiracy is alleged to have originated, both were citizens and residents of the state of New York. One of them, Wilcox, continuously maintained his residence in that state down to the time of the trial. The remaining defendant, some time after the beginning of the alleged conspiracy and several years before the trial, removed from

the state of New York to the state of Oklahoma, where he continued to reside and was engaged in business down to the time of the trial. Did these facts place the defendants in the class defined by the proviso quoted?

It is one of the inherent rights of a state to apprehend and bring to trial those accused of a violation of its public criminal law. This right may be exercised without limitation of time, save in so far as the state by its own statute has seen fit to waive or limit its otherwise undeniable right. In construing statutes of limitation in criminal cases, it is to be remembered, as declared by Dr. Wharton, that in such cases "The state is the grantor, surrendering by act of grace its right to prosecute and declaring the offense to be no longer the subject of prosecution." Looking at the language of the proviso as quoted, we find nothing to raise any doubt as to the meaning of the words used. Where the language of a statute is free from ambiguity, it is not the function of our courts to supply any words not used to bring about a result that would not follow if the construction were to be based solely on the language used by the legislature. The fact that in cases applying the statute to particular conditions, the courts may have used forms of expression which truly described the facts or conditions existing in a specific case, is no warrant for the conclusion that such expressions are to be read into the statute in every case.

Now it will be observed the statute uses no such expressions as "fugitive from justice," "fleeing from prosecution," "concealing their place of abode," etc. It makes no distinction in terms between its own citizens and the citizens of any other state. It declares that the protection of the two-year enacting clause shall not be extended to anyone who, during the said period of two years following the commission of the offense, "shall not have been an inhabitant of this state or usual resident therein." This is but another way of stating that those to whom the protection is given are per-

sons, who, for a period of two years after the commission of the offense, are constructively at least within the grasp of its process. We are not to concern ourselves with the determination of collateral issues. It is not for us to decide whether the state's officers were vigilant in beginning the prosecution, or whether the defendants made any attempt to conceal their places of abode, or other like matters. As was said by President Judge RICE, speaking for this court, in Com. v. Bates, 1 Pa. Superior Ct. 223: "If the statute began to run on the date of the commission of the offense, the prosecution was barred. But if it did not begin to run until the time when, according to the evidence and the implied finding of the jury, the defendants became inhabitants and usual residents of the state, it was not barred. This presents a legal question to which the same answer must be given at all times and under all circumstances, and the question whether under the particular circumstances of the case the finding of the indictment was unreasonably delayed does not enter into it." We are of opinion that during the period of two years and upwards elapsing between the completion of the alleged conspiracy and the finding of the bill, the defendants were neither inhabitants of the state of Pennsylvania or usual residents therein. As a consequence, we but follow the plain meaning of the language of the statute in concluding that their prosecution was not barred because of the lapse of time referred to.

We are unable to see how the legislative declaration we follow can be successfully argued to be an illegal discrimination against citizens of other states such as is forbidden by the federal constitution. A man may be a citizen of Pennsylvania at the moment of the commission by him of a crime within its territorial limits. But if it turn out that during two years following the commission of that crime he is not an inhabitant of Pennsylvania or a usual resident therein, he has no claim on the protection afforded by the enacting clause

of sec. 77.   In this respect he is neither better nor worse than the citizen of any other state who comes into Pennsylvania to commit a crime and then returns to his own state, where for a period of two years he continues to be an inhabitant and usual resident.   If under such circumstances the flight of two years would conclusively estop the state from the prosecution of the foreign citizen, but left it free to exhibit an indictment against its own citizen until he would become an inhabitant or resident of the state for a period of two years, then the discrimination in favor of the foreign citizen would be apparent.   The general principle we have in mind is well stated by Mr. Justice CLARK in Rothermel v. Meyerle, 136 Pa. 250, thus: "Of course, no state can, by taxation, or otherwise, discriminate against the citizens of other states, and in favor of its own citizens, as to the business carried on by them in the state.   Article IV, sec. 2, of the federal constitution, provides that citizens of each state are entitled to all the privileges and immunities of citizens of the several states: citizens of other states, therefore, must be accorded the same rights, under our laws, as the citizens of Pennsylvania. But the discrimination contained in the act of 1861 is not against citizens of other states more than citizens of our own state, nor against foreign markets more than domestic markets; it is directed, not against citizens of other states, but against nonresidents of the county of Berks, and against markets outside of the county. Article IV, sec. 2, of the constitution of the United States has nothing to do with the distinctions founded on domicile, merely: Lemmon v. People, 20 N. Y. 562, 608, and hence it is that nonresident suitors may be required to give bail for costs, when persons residing in the state are not so required."

So here we hold that the proviso to sec. 77 was not intended to discriminate and does not between citizens of a foreign state and citizens of Pennsylvania.   It says to either and to both alike, if you have committed a

misdemeanor within the portals of the state, you shall not be prosecuted after a period of two years, provided during that period you are an inhabitant or usual resident of the state. But it declares in the same voice, to both, that neither of you shall have the protection afforded by the statute if, during that period, you are not an inhabitant or usual resident of the commonwealth. We think therefore the learned court below was right in holding that the prosecution was not barred.

Having thus at considerable length expressed our views on what we consider the important question raised by this appeal, we briefly dispose of the remaining ones. The substance of the indictment, stripped of unnecessary verbiage, was that the defendants had conspired to cheat and defraud the prosecutor and others. The overt act charged as the means by which the conspiracy was carried out was the publication of a false statement in the local newspaper, designed to induce persons to deposit their money in the bank. The defendants had organized the bank. They were its owners. It is clear from the evidence its capital never exceeded $10,000. According to the testimony these defendants promised to pay the additional sum necessary to make the capital $25,000, when the same might be needed. They never did pay it, although they knew the straits to which the bank was reduced because of lack of funds. The advertisement was signed by these defendants. It was paid for by the bank, of which they were the chief officers. It was kept standing in the local newspaper until just shortly before the bank closed its doors, when the cashier testifies he was directed by the vice president Wilcox to withdraw the advertisement. The defendants then could not argue with any force that the indictment was obscure; that they were unable to determine where the advertisement was circulated, etc. If any more particularity were needed for their defense, a request for a bill of particulars would have secured to them every substantial right. We think the learned

judge below was right in refusing to quash the indictment and declining to arrest the judgment, and the assignments of error directed to that action of the court are overruled. There was no error, as we view it, in the refusal of the court to strike from the record the evidence of the witness Hurd as to the manner in which the advertisement was inserted in the newspaper. Such testimony tended to throw light on the transaction under investigation, and the defendants could not justly complain of its introduction. It necessarily follows from what we have previously said that the learned trial judge was right in refusing the point for binding directions and the points declaring that under the facts the prosecution was barred. We find no reversible error in the record. The assignments of error are all overruled.

The judgment is affirmed, and it is ordered that the defendants, appellant, appear in the court below at such time as they may be there called, and that they be by that court committed until they have complied with the sentence or any part of it that had not been performed at the time this appeal was made a supersedeas.