Commonwealth, Appellant, *v.* Turner.

Argued March 8, 1954. Before RHODES, P. J., ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ. (HIRT, J., absent).

*Basil C. Clare,* Assistant District Attorney, with him *Joseph E. Pappano,* First Assistant District Attorney and *Raymond R. Start,* District Attorney, for appellant.

*William H. Turner,* for appellee.

OPINION BY ROSS, J., July 13, 1954:

Appellee, Arthur Turner, was indicted and pleaded not guilty to a charge of cheating by false pretenses under The Penal Code (Act of June 24, 1939, P. L. 872, sec. 836, as amended by the Act of May 21, 1943, P. L. 306, sec. 1, 18 PS sec. 4836) in the Court of Quarter Sessions of Delaware County. At the close of the Commonwealth's case the trial judge sustained defendant's demurrer to the evidence, and the Commonwealth has appealed.

Appellee was employed by the Congoleum-Nairn Company at Trainer, Delaware County, from July 10, 1943 until March 7, 1952. On November 8, 1949 he went to the office of W. G. Brittain, chief clerk of his employer, to report that he had not received his vacation pay for 1949. Upon being shown photostatic copies of two returned checks in the amount of $57.68 each (which apparently represented his compensation for the period in question), he executed an affidavit that the signatures purporting to be his endorsements thereon were not his, nor authorized by him, and were believed by him to be forgeries, and that he had not received the proceeds of the checks. Thereupon the

employer issued new checks to him in replacement of those allegedly forged. On April 6, 1950, according to the testimony of Mr. Brittain, appellee again came to see him to complain that he had not received his 1950 vacation pay. Again he was shown photostatic copies of two returned checks, each in the amount of $46.17, bearing his endorsements, again he executed an affidavit that he believed the endorsements forgeries, and again new checks were issued by the employer.

Urban Doeber, a Commonwealth witness, testified that he had owned and operated a retail liquor store in Wilmington, Delaware, and that over a period of five or six years he had been cashing appellee's pay checks "practically every week". He testified that he had cashed both sets of checks in question when appellee presented them to him and that he had been required to make restitution in the amounts of $115.36 and $92.34 respectively.

Appellee at the time of the execution of the affidavits and at time of trial was a resident of the State of Delaware. The Commonwealth has contended in the court below, and now before us, that the two-year statute of limitations on actions for cheating by false pretenses embodied in the Act of March 31, 1860, P. L. 427, sec. 77, as amended by the Act of April 6, 1939, P. L. 17, sec. 1, 19 PS sec. 211, was inapplicable and that, instead, the case fell within the exception of the Act, viz., "Provided however, That if the person against whom such indictment shall be brought or exhibited, shall not have been an inhabitant of this State, or usual resident therein, during the said respective terms for which he shall be subject and liable to prosecution as aforesaid, then such indictment shall or may be brought or exhibited against such person at any period within a similar space of time during which he shall be an

inhabitant of, or usually resident within this State." That this was procedurally proper, in the absence of an averment in the indictment showing commission of the offense within the statutory period, see *Com. v. Bishop,* 71 Pa. Superior Ct. 255. The court below concluded that, more than three years having elapsed between the time Doeber repaid the bank for the last two checks, which was sometime subsequent to April 6, 1950, and the finding of an indictment against the defendant on June 2, 1953, the prosecution was barred. It rejected the Commonwealth's argument that the statute was tolled by defendant's nonresidence in this state inasmuch as he had been, during the period of his employment at least, available to the Commonwealth for arrest, there being no evidence of any attempt on his part to conceal himself or flee to another jurisdiction to avoid arrest.

As early as *Com. v. Bates,* 1 Pa. Superior Ct. 223, (1896), it was decided that where an indictment is found after the statute of limitations has run, it is incumbent on the Commonwealth to show that the case is within the exception. Whether it has sustained that burden of proof is the issue now before us.

The briefs of counsel for both parties deal at length with the question of the sufficiency of the Commonwealth's evidence to warrant submission of defendant's guilt to the jury. For the purposes of our present discussion we lay aside that issue in its entirety, and assume on the demurrer the truth of the facts as presented by the prosecution. The matter then resolves itself into the question of whether, where a defendant has committed a statutory offense in this Commonwealth and during the entire period of the statute of limitations appears regularly on weekdays at his employment in this Commonwealth, where he is available for arrest, does the fact of his residence in another

state, *per se,* operate to toll the running of the statute of limitations? We think not.

The Commonwealth contends that the instant case is governed by the decision in *Com. v. Wilcox,* 56 Pa. Superior Ct. 244, wherein the two defendants at the time of commission of the offense in Pennsylvania were residents of the State of New York. One remained there, while the other between time of finding of the indictment and trial moved to and became engaged in business in Oklahoma. The Supreme Court held that they were not within the protection of the statute of limitations for the reason that they were not "usual residents" of this Commonwealth. An examination of the argument of defendants' counsel (page 247) reveals that they urged that the statute had barred prosecution even though defendants were not Pennsylvania residents, on the ground that the residence of at least one of them, within close proximity to the borderline separating New York and Pennsylvania, was at all times known to the Commonwealth's officers. The Court considered the lack of vigilance on the part of the Commonwealth's officers a "collateral issue" and in rejecting defendants' contention applied the "plain meaning" construction of the statute (page 251). So far the *Wilcox* case and the instant one are analogous. We have searched the *Wilcox* opinion for evidence tending to show that either of the defendants commuted or even on occasion was known by the Pennsylvania authorities to have crossed the state borderline so as to have been available for service of process here, and have found no such inference. In the present case, defendant not only appeared daily at his employment in Delaware County but was *within the building and on the premises of the company—his employer —which he is charged in the indictments with defrauding.* This, in our view, marks the point of divergence

in the analogy and makes *Wilcox* distinguishable from the case at bar. At page 250 Mr. Justice HEAD states: "Now it will be observed the statute uses no such expressions as 'fugitive from justice', 'fleeing from prosecution', 'concealing their place of abode', etc. It makes no distinction in terms between its own citizens and the citizens of any other state. It declares that the protection of the two-year enacting clause shall not be extended to anyone who, during the said period of two years following the commission of the offense, 'shall not have been an inhabitant of this state or usual resident therein'. This is but another way of stating that those to whom the protection is given are persons, who, for a period of two years after the commission of the offense, are *constructively at least within the grasp of its process.*" (Italics ours.) Defendant Turner was certainly "constructively at least within the grasp of process" of the Delaware County authorities during the limitation period and we, therefore, find no inconsistency between the *Wilcox* decision and holding, as we do, that the statute was not per se tolled by his continued residence in the State of Delaware.

Bearing in mind throughout that the primary purpose of our criminal laws is to bring offenders to justice, we must nevertheless take cognizance of the fact that in conjunction with the definition of and punishment for each crime the legislature has imposed a period of limitation of actions, the sanctions of which are mandatory. If we were to hold that this case fell within the proviso tolling the statute of limitations, then under the circumstances of this case when, if ever, would the statute operate as a bar to prosecution? Would a prospective defendant, after his day's work in Pennsylvania, instead of repairing to his usual residence across the state line, be required to

establish domicile in Pennsylvania for two years after the commission of an act which he might fear would give our authorities reason to prosecute him in order to qualify as a "usual resident" within the meaning of the Act and hold himself available for possible arrest? Or, assuming he continues his prior mode of residence and employment, in the alternative may he be confronted with an indictment twenty years later? It may be that the laxity of officials to bring timely action is a "collateral matter" but under the facts of this case, the construction contended for by the Commonwealth is untenable, and we do not so construe it.

The order sustaining the demurrer is affirmed.