## Commonwealth v. Hillman

*Joseph J. Nelson,* District Attorney, and *Robert F. Banks,* First Assistant District Attorney, for Commonwealth.

*Timothy McNickle* and *Warren R. Keck, 3rd,* for defendants.

ACKER, J., December 1, 1972.—Defendants through timely motions to quash the respective indictments against them have raised the statute of limitations.

The Mercer County grand jury on November 8, 1972, found a true bill against defendant Longnaker for the crimes of fraudulent conversion, cheating by false pretenses and conspiracy. As to defendant Hillman a true bill was returned for the crimes of fraudulent conversion and conspiracy. All of this in connection with the sale of $30,000 worth of Transconti-

nental Leasing Systems, Inc., stock to William Tanko. The sale is alleged to have occurred on May 26, 1970. It is contended that they feloniously and fraudulently withheld, converted and applied the money to their own use and for the benefit of other persons; that they maliciously conspired with others who are named therein and persons not named to cheat and defraud William Tanko of $30,000 and with intent to cheat and defraud they knowingly and falsely procured the $30,000 from William Tanko representing to him that the Transcontinental Leasing Systems, Inc., was financially sound when as a matter of fact at that time it is claimed the corporation was operating at a loss and the existing shareholders' equity had been diluted to zero.[1]

The incidents were alleged to have occurred on May 26, 1970. All of the indictments were returned on November 8, 1972, being 2 years, 5 months and 13 days after the incident is alleged to have occurred. None of the indictments set forth any information or explanation as to why the indictments were in fact obtained after the two-year statute of limitations had expired. Testimony was taken and argument held during which the district attorney candidly admitted that the creditors of defendants had been endeavoring to negotiate with defendants in an effort to resolve their outstanding differences without the necessity of institution of criminal action and that in fact the matter was not brought to the district attorney's office until July 14, 1972, more than two years from the alleged event. The district attorney did not attempt to obtain prior court approval for late filing of the

---

[1] Act of June 24, 1939, P. L. 872, sec. 834, 18 PS §4834; Act of June 24, 1939, P. L. 872, sec. 836, 18 PS §4836; Act of June 24, 1939, P. L. 872, sec. 302, 18 PS §4302.

charges. No district attorney's bill was presented. The district attorney contends, however, that the statute of limitations is actually six years.

## Is the Statute of Limitations of Two Years Applicable to the Offense Here Charged?

The Commonwealth acknowledges that all of the offenses would be subject to a two-year statute of limitations if defendants were not officers of a corporation involved in the alleged illegal plan.[2]

Although a cursory reading of the statutes might lead one to believe that the legislature intended to extend for any officer of a corporation the statute of limitations to six years, further reading demonstrates the intent to limit such actions to only those "as to which any of the foregoing relationships to a bank, body corporate or public company, or municipal or quasi-municipal corporation, is an essential element of the crime."[3]

The reason for the additional four years to obtain indictments for such offenses is because of the opportunity of corporate officers to hide their conduct more readily than a person not in such a favored position. However, there can be no question that all of the offenses charged in this case could be perpetrated by a noncorporate officer and in fact it is not alleged in any of the indictments that either of the two defendants were corporate officers. This was contended in argument but was not made a part of the evidence even though one of the corporate officers, Donald M. Longnaker, was called as a witness

---

[2] Act of April 6, 1939, P. L. 17, sec. 1, 19 PS §211 and Act of May 16, 1945, P. L. 582, no. 238, sec. 1, 19 PS §213.

[3] Act of May 16, 1945, P. L. 582, no. 238, sec. 1, 19 PS §213.

for the Commonwealth and questioned concerning his whereabouts since May of 1970.[4]

Wherefore, all of the crimes charged are barred by the two-year statute of limitations.

### Commonwealth's Motion to Amend the Indictment to Extend the Statute of Limitations from May 26, 1970, to November 10, 1970?

The Commonwealth has orally moved to extend

---

[4] All of the cases dealing with this subject hold that the crime committed must be one which only an officer of the corporation could commit because of his position in order to extend the statute of limitations to six years: Commonwealth v. Burns, 197 Pa. Superior Ct. 282, 178 A.2d 619 (1961), where defendant was a superintendent of a county home and indicted for obtaining property by false pretenses and conspiracy. A two-year statute was held applicable even as to the conspiracy: Commonwealth v. Kauffman, 190 Pa. Superior Ct. 444, 154 A.2d 269 (1959), where the defendant was manager and superintendent of sales of a private corporation and was indicted for fraudulent conversion and embezzlement. A two-year statute of limitations was held applicable to fraudulent conversion but a six-year statute of limitations as to embezzlement in that it could be committed only by a corporate officer: Commonwealth v. Russo, 177 Pa. Superior Ct. 470, 111 A.2d 359 (1955), where a police officer of a vice squad was indicted for perjury and obstructing public justice. Being found not guilty of perjury the issue as to statute of limitations remained only as to the latter offense of obstructing justice. The statue of limitations was held to be applicable because of the police officer's relationship to the municipality as not being essential for the crime of obstructing justice: Commonwealth v. Parish, 176 Pa. Superior Ct. 267, 107 A.2d 203 (1954), where defendant, an officer of a paving company, was indicted for bribery of the president of the Pittsburgh City Council. The court held that a two-year statute of limitations was applicable, for to construe otherwise would be to sanction a most unusual discrimination against those who happen to be officers of a corporation: Commonwealth v. Hayden, 72 D. & C. 75 (1950), reheard at 73 D. & C. 290 (1951), held a two-year statute of limitations to be applicable to a president of a corporation charged with " 'opening a road without approval of board supervisors.' "

the statute of limitations by 5 months, 15 days as to the offense of conspiracy in order to bring it within the two-year statute of limitations in that the grand jury returned the indictment on November 8, 1972. The theory of the Commonwealth is that the conspiracy is a continuing offense and until such time as the corporation went out of business the acts of hiding from the victim, Tanko, the real nature of the corporation and its actual financial standing was a continuation of the act of conspiracy. This motion must be denied. Commonwealth v. Burns, supra, specifically ruled that when a conspiracy refers to the same crimes which are barred by the statute of limitations the indictments as to conspiracy must be equally barred. Further, in determining the date upon which the statute of limitations commences, consideration is given only to the date stated in the indictment: Commonwealth v. Silverstein, 445 Pa. 497, 284 A.2d 773 (1971).

Wherefore, the Commonwealth cannot extend the statutory period as to conspiracy beyond the date of the act alleged in the indictment.

*Is the Commonwealth Barred from Contending that the Statute of Limitations Is Greater than Two Years Due to Its Failure to Allege in the Indictment that It Would Contend a Longer Statute of Limitations?*

Commonwealth v. Cody, 191 Pa. Superior Ct. 354, 156 A.2d 620 (1959), holds that if the Commonwealth is to make an issue that a defendant was not an inhabitant of the state or usual resident during the two-year statute of limitations, page 358:

". . . it should be charged in the indictment so as to apprise the defendant that he must defend not only

against the crime itself but also against the limitation of prosecution. He should be informed before trial why the statute of limitation has no application. The opportunity to prepare a defense against such allegation should be given to the same extent as the opportunity to defend against the accusation of crime itself. Were it otherwise, no attack, preliminary to trial, could ever be made on this ground, and if made during or subsequent to trial, an accused would be faced with the well established rule that an attack on an indictment will not be considered after a plea is entered and the jury is sworn."

There is a strong dissent by Judge Wright, now President Judge of the Superior Court, setting forth respectable authority of both the Supreme and Superior Courts to the contrary, but of more ancient origin. The Cody case, supra, was reviewed in Commonwealth v. Howard, 210 Pa. Superior Ct. 284, 289 A.2d 223 (1967), where it was held not to be controlling under the facts of that case. Commenting, the court stated, page 291:

"This was the apparent holding of Commonwealth v. Cody, 191 Pa. Superior Ct. 354, 156 A.2d 620 (1959), although an able dissent was filed by Judge Wright in that case citing decisions of the Supreme Court and this court apparently contrary."

There is no rule of criminal procedure promulgated by either the Supreme or Superior Court requiring that the district attorney allege facts to extend the statute of limitations in an indictment. However, the case of Commonwealth v. Cody, supra, has never been overruled and does specifically state that there is such a requirement. Therefore, this case could be dismissed on that ground alone. The burden of proof to establish facts taking the case out of the two-year statute of limitations is upon the Commonwealth:

Commonwealth v. Turner, 176 Pa. Superior Ct. 32, 107 A.2d 136 (1954). The Commonwealth produced no testimony as to the whereabouts of David Hillman. Having failed to meet its burden of proof in any event, the motion must be granted as to that defendant.

The Commonwealth, however, elected to call Donald M. Longnaker as its witness as to his whereabouts between May 1, 1970, and the date of the hearing of November 30, 1972. Although the question of whether a defendant is an "inhabitant of this State, or usual resident therein,"[5] is normally a jury question,[6] when defendant is called by the Commonwealth and it acknowledges that it has no other testimony concerning the issue it is bound by that testimony. So, concluding, it appears that from May of 1970 to the latter part of November of 1970, defendant, Longnaker, was a resident of 303 Canterberry Court, Georgetown Apartments, Borough of Sharpsville, Mercer County, Pa. From the latter part of November 1970 until the last of January of 1971, defendant was a resident of Lexington, Kentucky. Suffering financial losses and receiving no compensation of any type from November through January, defendant, Longnaker, placed his furniture in a van to return it to Sharon, Pa. Being unable to pay the drayman's charges it was placed in storage in Youngstown, Ohio, and eventually sold. Because of the abject financial condition of defendant he was required to split his family, moving to Lamartine, Clarion County, Pa., to the residence of his father, Fred E. Longnaker, with his 12-year-old daughter. His wife and an older daughter moved to Butler, Pa.,

---

[5] Act of April 6, 1939, P. L. 17, sec. 1, 19 PS §211.

[6] Commonwealth v. Dunnick, 204 Pa. Superior Ct. 58, 202 A.2d 542 (1964).

where she took employment as a cook and waitress. Both of defendant's vehicles were repossessed and sold and he was without transportation or insurance. However, he was able to secure a leasing arrangement from a company in Cleveland, Ohio, and began selling insurance during weekdays in Fort Wayne, Indiana, but returned to Pennsylvania to live with his father, daughters and wife every weekend for approximately five months. He then started selling insurance in Dover, Delaware, until May of 1972, but returned again each weekend to his wife, children and father. He did not in any way attempt to secrete or hide his whereabouts, nor was there any evidence that he knew of any charges filed against him upon which service could not be obtained and in fact no charges were filed until July 14, 1972, by which time he had moved to 2804 Highland Road, Hickory Township, Mercer County, Pa., where he was available for service at any time. He was absent from the State, therefore, with his family in Kentucky from the end of November to the end of January, a period of three months. Defendant is five and one-half months over the two-year statute of limitation. Therefore, the issue is whether residing with his father and daughter in Clarion County places him in the category of being "an inhabitant of this state or usual resident therein." This language is discussed in Commonwealth v. Dunnick, supra, at page 63:

"'The words "usual resident" do not refer to defendant's place of residence, but to his manner of residence. "Usual," when used in this sense, means "customary" or "common" . . . To be an "usual resident," therefore, one must conduct himself in accordance with his customary mode of life. One might commit an offense and move to another part of the State in an open manner, or even go from the State,

if in military service, and not be barred from claiming the benefit of the statute . . . but this is not so where the offender flees from justice and, subsequently, by fraud and concealment, succeeds in avoiding arrest . . . If the offender lives outside of the State he is a non-resident, and if he remains in hiding or concealment within the State he is an "inhabitant," but not an "usual resident'": Commonwealth v. Weber, 67 Pa. Superior Ct. 497 (1917), affirmed in 259 Pa. 592 (1918).

In Commonwealth v. Turner, supra, a defendant who regularly lived out of the Commonwealth but whose regular place of employment was within the Commonwealth had the benefit of the two-year statute of limitations. Although the matter had not yet been presented to a jury, in Commonwealth v. Dunnick, supra, the court implies that a jury could find that a student who contended that his residence was in Pennsylvania with his parents and who admitted that he knew a constable was looking for him with a warrant who worked in a summer YMCA camp in Maryland and later waited on tables in the Poconos went to California State Teachers College in California, Pa., but spent most of his Christmas and Easter vacations at his home in New Freedom, Pa., was a usual resident of the Commonwealth.

We conclude that under the facts of this case defendant was an inhabitant of the State or usual resident therein. There is no evidence that he made any effort to secrete or hide his whereabouts, that his mode of living and working was forced upon him only because of his then dire financial straits. In light of all of the contentions advanced by defendant Longnaker this court concludes as a matter of law that the motion to quash the indictment as to all charges against him returned by the November 1972 Grand Jury must be granted.

## ORDER

And now, December 1, 1972, the motion to quash the indictment as to all offenses upon which true bills were rendered by the Mercer County Grand Jury are quashed, defendants, David Hillman and Donald M. Longnaker, are discharged and the costs to be paid by the County of Mercer.