UNITED STATES of America ex rel.
Kahmid SOLOMON, Relator-
Appellant,

v.

Vincent R. MANCUSI, Warden of Attica
Prison, Respondent-Appellee.

No. 300, Docket 32554.

United States Court of Appeals
Second Circuit.

Argued Jan. 10, 1969.

Decided May 5, 1969.

Herald Price Fahringer, Buffalo, N. Y.
(Lipsitz, Green, Fahringer, Roll Schul-
ler & James, Willard H. Myers, III, Buf-
falo, N. Y., on the brief), for appellant.

Hillel Hoffman, Asst. Atty. Gen., New
York City (Louis J. Lefkowitz, Atty.
Gen., of the State of New York, New
York City, Samuel A. Hirshowitz, First
Asst. Atty. Gen.) for appellee.

Before MOORE, FRIENDLY and FEINBERG, Circuit Judges.

MOORE, Circuit Judge:

Kahmid Solomon, appellant herein, was indicted in the Erie County Court on April 21, 1964, for the sale of narcotics in violation of former § 1751 of the New York Penal Law, McKinney's Consol.Laws, c. 40. On the following day he was arraigned and an attorney, Daniel J. Kij, Esq., was assigned as counsel for his defense. At that time Kij was, and had been for nearly 13 months, an attorney associated with the Erie County Attorney's Office. Early in May, 1964, Kij received a notice of trial which informed him that he had been appointed as counsel for Solomon, and that the District Attorney of Erie County was ready to proceed with the trial at the earliest convenient date. Shortly thereafter, Kij appeared before a judge of the Erie County Court and asked to be relieved as appointed counsel for Solomon because of a possible conflict of interest in view of his official capacity with the Erie County Attorney's Office. Kij was informed that he would be "removed and replaced." Apparently, no other lawyer was assigned to take his place.

Kij never saw or spoke with Solomon. In June of 1964 Kij received two telephone calls from the Erie County jailer stating that Solomon wished to talk with him about his defense. Kij advised the jailer that he was no longer associated with the matter and that someone else had been appointed to take his place. Twice, notices of calendar calls were sent to Kij at the address of the law firm with which he had been associated before he had taken the position with the Erie County Attorney's Office. The first of these notices advised that the case would be moved for trial at a calendar call to be held on June 26, 1964; the second advised of a calendar call on September 3, 1964. Neither notice was received by Kij or Solomon. Subsequently, Kij's old office did inform him by telephone that a letter had been received from the County Court judge who had assigned and supposedly relieved Kij that the Solomon case had been scheduled for trial in November. Kij, in November, made a second appearance before the County Court, restated his position and was told that he had no further responsibility in the matter.

On January 13th, the County Court appointed new counsel for Solomon's defense, but this counsel informed the court that he was about to enter the hospital for a major operation and could not therefore assume such duties. Immediately thereafter Robert Rosinski, Esq., was appointed counsel and, on January 15, 1965, Solomon for the first time conferred with an attorney—Rosinski.

On March 16, 1965, Rosinski moved in the County Court to dismiss the indictment against Solomon on the grounds that he had been deprived of the assistance of counsel for nine months and had been denied a speedy trial. The court denied the motion on the grounds that there had been no showing that Solomon had been prejudiced by the delay, or that Rosinski's investigation of the matter had been in any way impeded. Solomon was thereafter convicted following a trial by jury of the crime of selling a narcotic drug. On April 12, 1965, he was sentenced to Attica State Prison for not less than five nor more than ten years. The conviction was affirmed without opinion by the Appellate Division on March 31, 1966 (25 A.D.2d 719, 269 N.Y.S.2d 1014) and the New York Court of Appeals denied leave to appeal on July 12, 1966.

Having exhausted his state remedies, Solomon shifted to the federal forum by instituting a habeas corpus proceeding in the United States District Court for the Western District of New York. His petition once again raised the questions of excessive delay and denial of the assistance of counsel. The district court denied Solomon's writ but granted a certificate of probable cause for appeal.

There is no dispute in this case that Solomon was detained for eleven months

between his arraignment and trial. During the first nine months of this detention, he did not have the assistance of counsel, for the reasons set forth above. He now contends, as he did in his previous state and federal papers, that he was denied his Sixth Amendment rights to a speedy trial and to the assistance of counsel.

This circuit has looked to four factors in deciding whether there has been a violation of the right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the prejudice to the defendant; and (4) waiver by the defendant. See Note, 57 Colum. L.Rev. 846, 861–63 (1957); United States ex rel. Von Cseh v. Fay, 313 F.2d 620, 623 (2d Cir. 1963); United States v. Simmons, 338 F.2d 804, 807 (2d Cir. 1964); United States v. Tortorello, 391 F.2d 587, 589 (2d Cir. 1968) (Per Curiam); United States v. Richardson, 291 F.Supp. 441, 444 (S.D.N.Y. 1968). Looking to the first of these factors, we note that dismissal has rarely been granted for a delay of less than several years. Note, 51 U.Va.L.Rev. 1587, 1591, f. 20 (1965). This circuit has held that "the unexcused delay of approximately four years was an undue delay within the meaning of the Sixth Amendment even though appellant has not shown that it prejudiced him in the presentation of his defense." United States v. Lustman, 258 F.2d 475, 478 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958). In *Lustman*, the court denied appellant relief on the ground that he had waived his constitutional right to a speedy trial by not promptly asserting that right. And in the recent case of United States v. Richardson, *supra*, 291 F.Supp. at 444 the court, citing *Lustman*, noted that a period of four years—the relevant delay in that case—was enough to satisfy the first factor. We know of no case, and none has been brought to our attention, in which a delay of less than a year has been thought to satisfy the "length of delay" requirement.

Solomon, citing the language in *Lustman* that "a showing of prejudice is not required when a criminal defendant is asserting his constitutional right under the Sixth Amendment," 258 F.2d at 478, suggests that there is a rule in this circuit that undue delay in bringing a defendant to trial may constitute a Sixth Amendment violation *per se*, without a showing of prejudice. Even if *Lustman* in fact still stated the appropriate rule, such would not necessarily be applicable in the instant case since the delay there held to be *per se* violative of the Sixth Amendment was four years and there was no indication in that case that the rule would apply to shorter delays. Later decisions of this court, however, indicate that a showing of prejudice is required in cases involving delay between arrest and trial. In United States v. Kabot, 295 F.2d 848, 852–853 (2d Cir. 1961), cert. denied 369 U.S. 803, 82 S.Ct. 641, 7 L.Ed.3d 550 (1962) the court, finding that a two-and-one-half year delay between arrest and trial for which the defendant was partly responsible was not unreasonable, noted that "[there was], moreover, no showing of prejudice to appellant from the delay." In United States ex rel. Von Cseh, *supra*, 313 F.2d at 623, a showing of prejudice was one of the four factors listed as relevant in examining speedy trial cases. See also United States v. Kelly, 349 F.2d 720, 768 (2d Cir. 1965); United States v. Simmons, *supra*, 338 F. 2d at 808; United States v. Tortorello, *supra*, 391 F.2d at 589; and United States v. Richardson, *supra*, 291 F.Supp. at 444 [which, while noting that a four-year delay was long enough to satisfy the first of the four speedy trial requirements, was "careful to note that mere lapse of time does not itself establish a violation of the Sixth Amendment"]. In addition, cases construing Rule 48(b), Federal Rules of Criminal Procedure, which authorizes the dismissal of an indictment "[i]f there is unnecessary delay in bringing a defendant to trial * * *," hold that "there must be a showing that the delay prejudiced the de-

fendant's ability to rebut the government's case, or that the delay was caused by oppressive governmental action." United States v. Dooling, 2 Cir., 406 F.2d 192, 196 (decided January 21, 1969). See also Fleming v. United States, 378 F.2d 502, 504 (1st Cir. 1967), noting that "a mere lapse of time is not enough to establish denial of a speedy trial."

Solomon contends that his defense was in fact prejudiced by the delay herein, alleging as he did before the state court and the district court that recollection of events dims with the passage of time, as does the ability to remember possible witnesses for his defense. It is further urged that the failure to appoint counsel to talk with Solomon constituted prejudice, in that no one trained in the law could prepare the defense, muster witnesses and investigate events so long after the arrest and indictment. But in his previous state and federal appearances, and now before this court, Solomon has been unable to make a showing, beyond these allegations, of any particular way in which he was prejudiced. Except in cases such as *Lustman, supra,* where "the delay might be so substantial as to be prima facie prejudicial * * *," United States v. Simmons, *supra,* 338 F.2d at 808, a more particularized showing of prejudice than a mere allegation of the dimming of the memory is required. United States ex rel. Von Cseh, *supra,* 313 F.2d at 624, noting that "Von Cseh has not demonstrated that any prejudice resulted from the delay."

Solomon has made no such demonstration of prejudice. At the trial, he testified in great detail as to many of the events, conversations, names and transactions about which he was questioned on the stand. His memory dimmed only when he was questioned about the name and address of his alibi witness and when he was questioned about the identification of the federal narcotics agent to whom he allegedly sold cocaine. Beyond the fading of memory, however, Solomon contends that his counsel, when finally appointed, could not adequately prepare the case due to the passage of

time. In United States v. Richardson, supra, the District Court found that a defendant who had been marked off the calendar while he cooperated with the Federal Bureau of Investigation, who was without counsel for nearly four years, and who was assured by counsel with whom he briefly conferred just after arrest and who died shortly thereafter that his case would never come to trial, made a showing of prejudice apart from the question of loss of memory with the passage of time. The court in *Richardson* noted that:

> In addition to defendant's lapse of memory, then, no one trained in the law has kept track of the case over the years so that the arrest might have been investigated, witnesses found, and a defense prepared with a view to future trial. This defendant can hardly be expected to present a defense in his case at this late date. His present attorney, retained [only recently], has had no recourse to either the facts of the arrest, other than as recorded by the government, or prior legal work in Richardson's defense. 291 F.Supp. at 445.

In the instant case a much shorter period of time had passed when Solomon's trial counsel, Rosinski, was appointed, and neither he nor Solomon has pointed to any witness (save the forgotten alibi witness) or item of evidence that was unavailable by reason of the delay. We therefore find that no showing of prejudice has been made.

Turning to the matter of the "reason for the delay," the appropriate test is whether a "purposeful or oppressive" violation of Solomon's Sixth Amendment rights occurred. Pollard v. United States, 352 U.S. 354, 361–362, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957). In *Pollard,* the district court's tardiness in sentencing a defendant was excused on the ground that the delay was accidental, not purposeful and oppressive, and was promptly remedied when discovered. This test was sustained in United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). While the delay

suffered by Solomon was unfortunate, it cannot be said that it was the result of purposeful or oppressive action on the part of the court or the district attorney both of whom, as evidenced by the fact that they sent inquiries to Kij at his old law firm, were under the mistaken belief that he was still counsel for Solomon. Kij's old law firm, which failed to forward the notices of the scheduled court appearances, and Kij himself, who failed to remind the court and the district attorney immediately after receiving the telephone calls from Solomon's jailer that he had been relieved as counsel, must bear some share of the blame for the mistake. Although we strongly hope that an oversight such as the one that kept Solomon without counsel for nine months will not happen again, the oversight in this case cannot be called purposeful or oppressive, and does not warrant dismissal.

Finding the delay not unduly long, not prejudicial and not purposeful or oppressive, we do not need to consider the question of waiver.

Affirmed.

FEINBERG, Circuit Judge (dissenting):

I dissent.

Two hundred sixty-eight days in jail for this indigent defendant before trial, without the effective assistance of counsel, because of neglect by court and prosecutor cannot be tolerated. Under these circumstances, I would hold that the nearly eleven months between indictment and trial denied petitioner Solomon a speedy trial, "one of the most basic rights preserved by our Constitution." Klopfer v. North Carolina, 386 U.S. 213, 226, 87 S.Ct. 988, 995, 18 L.Ed.2d 1 (1967). In this context, the mildest description of the state's claim of lack of prejudice is that it is unrealistic. To be consigned to prison for almost nine months, forgotten by government officials while making vain efforts to contact supposedly appointed counsel, is prejudicial. Anyone put through the same experience would so regard it.

I realize that the claim is that this bungled incarceration did not prejudice petitioner *at trial*. But how can anyone be sure about that? In Smith v. Hooey, 393 U.S. 374, 379–380, 89 S.Ct. 575, 578, 21 L.Ed.2d 607 (1969), the Court pointed out of a defendant incarcerated while awaiting trial in another jurisdiction:

Confined in a prison, perhaps far from the place where the offense covered by the outstanding charge allegedly took place, his ability to confer with potential defense witnesses, or even to keep track of their whereabouts, is obviously impaired. And, while "evidence and witnesses disappear, memories fade, and events lose their perspective," a man isolated in prison is powerless to exert his own investigative efforts to mitigate these erosive effects of the passage of time. [Footnote omitted.]

While the period of delay there was much longer than here, the rationale is the same. See Note, The Right to a Speedy Trial, 20 Stan.L.Rev. 476, 493–97 (1968).

Moreover, the exclusive focus on prejudice to the defendant at trial ignores other important aspects of the right to a speedy trial. In United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966), the Court recognized these other types of prejudice in speaking of the right to a speedy trial:

This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself.

There can be no doubt that petitioner has suffered "undue and oppressive incarceration prior to trial." Of equal importance is the often neglected but nonetheless pressing public interest in speedy trials. A recent report of an advisory committee of the American Bar Association Project on Minimum Standards for

Criminal Justice, composed of distinguished judges, scholars and lawyers, emphasized this public interest:

> From the point of view of the public, a speedy trial is necessary to preserve the means of proving the charge, to maximize the deterrent effect of prosecution and conviction, and to avoid, in some cases, an extended period of pretrial freedom by the defendant during which time he may flee, commit other crimes, or intimidate witnesses.

Standards Relating to Speedy Trial 10–11 (1967). That observation, made two years ago,[1] was persuasive then and is even more so now. While defendant here was not on bail so that the dangers of too long a period of pretrial freedom were not present, the need for swift enforcement of the law was. The surest way to dilute the deterrent effect of the criminal law is to delay its enforcement unduly. The responsibility for that swift enforcement should be placed where it belongs: on the agencies of the government whose job it is to bring it about, the prosecutors and the courts. It was because of this public interest in speedy trials, for example, that the ABA Report recommended that, in considering when the time for a speedy trial commences to run, it should not matter whether a defendant has demanded one, see Speedy Trial Report 16–17. Of course, that question frequently arises in the context of waiver and need not concern us here, since this indigent defendant, while incarcerated and without counsel, did not waive his right to a speedy trial.

There is no need to discuss each of the decisions relied on by the majority, distinguishing some and picking out bits and pieces of language in others that would support reversal here; e. g., United States ex rel. Von Cseh v. Fay, 313 F.2d 620, 623 (2d Cir. 1963) ("even a short delay might constitute a violation of the defendant's constitutional right where the defendant is held without bail, and there is no reason for the delay"); United States v. Lustman, 258 F.2d 475, 478 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958) ("a showing of prejudice is not required when a criminal defendant is asserting a constitutional right under the Sixth Amendment"). It is enough to point out that in none of those cases was there the striking combination of government neglect and denial of counsel we have here. Nor is it now necessary in this area of predominantly judge-made law to fix a minimum period beyond which any delay is "undue," although such a recommendation has been made to both court and legislature. Thus, the ABA Speedy Trial Report proposed that (at 14):

> A defendant's right to speedy trial should be expressed by rule or statute in terms of days or months running from a specified event. Certain periods of necessary delay should be excluded in computing the time for trial, and these should be specifically identified by rule or statute insofar as is practicable.

There was, of course, no significant period here of "necessary delay" since the state conceded that it was ready to try the defendant immediately after his indictment and no explanation has been advanced for its failure to do so or for the failure of the state court promptly to replace Mr. Kij after he twice withdrew as petitioner's assigned counsel. The ABA Report also points out that:

> In the few states which currently express the [permissible] time [from a specified event until trial] in days or months rather than terms of court, the times range from seventy-five days to six months.

And:

> The President's Crime Commission has proposed that the period from arrest to trial of felony cases be not more than 4 months.

*Id.* at 14 & n. 1. *Cf.* N.Y.Code of Cr.Proc. §§ 668, 669–a.

---

1. The Report was later adopted by the ABA House of Delegates in February 1968.

The wisdom of these suggested periods is not now before us; I mention them only to emphasize—as does the ABA Report—that speedy trials are not just the private concerns of the defendants involved and that the delay in this case was not insignificant. *Cf.* authorities cited in Note, The Right to a Speedy Trial, 20 Stan.L.Rev. 476, 478 & n. 18 (1968); Godfrey v. United States, 123 U.S.App.D.C. 219, 358 F.2d 850 (1966) (delay of only 4 months from offense to arrest). All I would hold here is that an almost eleven-month delay is too much when for about nine months of that period an indigent defendant is incarcerated without counsel through government neglect. Under those circumstances, I would reverse the judgment below and direct the granting of the writ. This result is certainly made no less palatable by the fact that appellant has already been imprisoned for over five years, a period longer than his minimum sentence.