**UNITED STATES of America**

**v.**

**Kenneth A. SKINNER, Defendant.**

**No. 67 Cr. 36.**

United States District Court,
S. D. New York.

Nov. 10, 1969.

relieve you from further representation of him?

"A. That may be correct, Your Honor."

Robert M. Morgenthau, U. S. Atty., New York City, for plaintiff.

Lawrence A. Porcari, Yonkers, N. Y., David C. Condon, White Plains, for defendant.

Memorandum Opinion On Motion to Dismiss Indictment

MOTLEY, District Judge.

On July 20, 1963 the payee of a United States Treasury check, dated April 9, 1962, filed a claim against the United States alleging that she had not received the check. Thereafter, on October 18 and 21, 1963, agents of the United States Secret Service interviewed defendant who was the superintendent of the building where the payee lived. Defendant admitted that he had seen the check but denied having forged thereon the endorsement of the payee. During the second interview, defendant furnished names, but not addresses, of two persons whom he thought might have taken the check. Upon each interview, defendant refused to give any handwriting samples. However, the Government alleges in an affidavit that on December 16, 1963 a document analyst employed by the Post Office submitted a report in which he identified defendant as the writer of the endorsement on the check.

Thereafter, on January 24, 1964 defendant was arrested. At this time, defendant again denied having forged the endorsement on the check and again refused to furnish handwriting specimens. Following his arrest, defendant was taken before the United States Commissioner where he was advised of his right to "retain" counsel and where bail was fixed in the amount of $500. After spending approximately 10 days in jail, other persons arranged for defendant's bail and he was released on February 3, 1964. According to the Commissioner's records, defendant waived a preliminary hearing when brought before the Commissioner on February 3, 1964.

On January 10, 1967, the case was presented for the first time to a grand jury and an indictment returned. The indictment was filed on January 17, 1967. On the same date, a bench warrant was issued for defendant's arrest. The Government concedes that, "it does not appear that any effort was made to execute the warrant prior to May of 1969." (Affidavit of Rient, p. 3). In June 1969 defendant was contacted by a Government agent and for the first time advised that he had been indicted and that there was a warrant for his arrest. (Affidavit of Skinner, p. 2, para. 3). Defendant then retained counsel who arranged for defendant's voluntary appearance for arraignment on the indictment to which he pleaded not guilty on June 24, 1969.

Defendant has resided continuously at 98 Ravine Avenue in Yonkers, New York, the address to which the check was allegedly mailed in April 1962, and has resided there since his arrest in January 1964. His bail bondsman was not notified of the indictment or the issuance of the bench warrant.

Defendant moved on August 18, 1969 to dismiss the indictment or, in the alternative, for an order directing a preliminary examination of all Government witnesses, with the right of defendant's counsel, prior to the date of said preliminary examination, to obtain the names and addresses of all such witnesses and to inspect any statements and reports of statements made by such witnesses. Defendant further seeks to have this court direct the United States Attorney to produce for examination the check in question, the report of the Government's document analyst, and any recorded statements made by defendant, all of which the Government has agreed to give defendant. The remaining question, therefore, is whether defendant is entitled to a dismissal of the indictment or, in the alternative, a preliminary examination.

Defendant was arrested on the complaint of a Secret Service agent charging defendant with unlawfully endorsing on the check the payee's name. In his complaint the agent alleges that the bases of his knowledge and for the charge against defendant are investigations conducted by him and the positive handwriting analysis. It is upon this same evidence that the Government says it will proceed to try defendant now, five and a half years later.

The Government offers two excuses for its admitted failure to promptly bring this case to trial. The first excuse is that subsequent to defendant's arrest, the Secret Service attempted to locate a "possible accomplice" and thus presentation of the case to the grand jury was deferred by the Assistant United States Attorney then in charge of the case, pending the results of that investigation. However, the Government points out in its affidavit that in August of 1966 the case was reassigned to a second Assistant United States Attorney. In his reassignment memorandum, the first Assistant United States Attorney in charge of the case "indicated" that a "possible accomplice" had been located "recently" but had denied any knowledge of the check. (Affidavit of Rient, p. 3).

The Government's first excuse is flimsy, at best, in view of the fact that it is proceeding to trial now upon precisely the same crucial evidence it had in January 1964 when defendant was arrested, i.e., the alleged positive handwriting analysis. It must also be noted that defendant was arrested three months *after* he gave the information regarding a "possible accomplice", on the complaint of the Secret Service agent.

The second excuse offered by the Government is a statement, made for the first time in a supplemental brief ordered by the court after oral argument of this motion, that the Government believed defendant to be a fugitive. This excuse is without foundation in fact. Defendant has resided at the same address since the relevant dates in 1962. Moreover, the Government concedes that no attempt was even made to locate defendant for two and one-half years after the indictment and bench warrant were filed and issued.

There is, therefore, in this case an unexcused delay of 5½ years from the time of arrest until the time of arraignment and trial. Compare, United States v. Richardson, 291 F.Supp. 441 (S.D.N.Y.1968). Five and one-half years must be considered not only an undue delay but, when unexcused, it must be considered prima facia prejudicial, i. e., without the necessity for showing any more particularized prejudice beyond faded memory. United States ex rel. Solomon v. Mancusi, 412 F.2d 88, 91

(2d Cir.1969). This means that the burden then shifts to the Government to show that defendant is not prejudiced by the delay.

The Government says defendant is not prejudiced because its "generous" pre-trial discovery offer, which includes giving defendant his pre-arrest and post-arrest statements, will help defendant jog his memory. The court agrees that these statements will help to refresh defendant's recollections. But what the Government overlooks is the fact that during all of this time, defendant has been without counsel. In an affidavit defendant alleges that when arrested he was unable to afford counsel, and despite his making this fact known to the Commissioner, none was appointed for him. The Commissioner's records clearly disclose that defendant was advised of his right to "retain" counsel when arrested in January 1964. Defendant's allegation that he was unable to afford counsel when arrested is corroborated by the undisputed fact that he remained in jail for ten days after arrest for lack of ability to post a $500 bail bond. Consequently, during all of this 5½ year period there has been no one trained in the law who has kept track of the case over the years so that the arrest might have been investigated, pretrial motions made, witnesses found and kept track of, and a defense prepared with a view to future trial. Compare, United States v. Richardson, supra, at 445. As defendant points out, the check was cashed in a bank. The teller, whose mark appears on the back of the check, and who might have been able to testify that defendant was not the person who cashed the check or other witnesses who might have testified that defendant was elsewhere at the time cannot, according to defense counsel, now remember the events of 1962. Such testimony might have been corroborative of a plea of not guilty. If defendant had been indicted and arraigned much earlier, counsel would have been

assigned by this Court, if not retained by defendant, at that much earlier time, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Witnesses could have been pursued and interviewed and their memories could likewise now be jogged by lawyers' notes or other memoranda. Five and one-half years after the arrest, defense counsel must now rely on the Government's version of the facts surrounding that arrest and must tailor the defense to the Government's case.

The Government has also overlooked the fact that other prejudice has been visited upon the defendant and the public. The delay has subjected defendant to an unduly long period of anxiety and concern which accompanies public accusation. United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). Also, as Judge Feinberg noted in his dissent in the Solomon case, supra, 412 F.2d at 92–93, a recent report of an advisory committee of the American Bar Association Project on Minimum Standards for Criminal Justice emphasizes the public interest involved in cases such as this:

"From the point of view of the public, a speedy trial is necessary to preserve the means of proving the charge, to maximize the deterrent effect of prosecution and conviction, and to avoid, in some cases, an extended period of pretrial freedom by the defendant during which time he may flee, commit other crimes, or intimidate witnesses. Standards Relating to Speedy Trial 10–11 (1967)."

This court agrees with Judge Feinberg's observation that, "The surest way to dilute the deterrent effect of the criminal law is to delay its enforcement unduly." Id. at 93. At a meeting of the Judicial Conference of the United States on November 1, 1969, the Conference declared that all criminal cases pending for more than one year whose defendants are available for trial are a "judicial emergency." To sanction the

5½ years delay which has occurred here as a result of obvious Government negligence would subvert the public interest expressed by the declaration and the policy of the law as evidenced by Rule 48 (b), Fed.R.Crim.P., empowering the court on its own motion to dismiss an indictment if there has been unnecessary delay in presenting a charge to a grand jury or in bringing a defendant to trial.

■ The Government agrees that upon a showing that defendant was indigent and consequently could not have retained counsel of his own choosing earlier, it cannot be presumed that such a defendant waived his right to a speedy trial. United States v. Richardson, *supra*, 291 F.Supp. at 447. On the other hand, there is nothing before this court from which it could conclude that this indigent defendant intentionally relinquished his constitutional right to a speedy trial. Johnson v. Zerbst, *supra*, one of the most basic rights preserved by our Constitution. Klopfer v. North Carolina, 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). After defendant was released on bail and the years began to pass, it was not unreasonable for him to assume that the Government had abandoned its prosecution, especially since defendant repeatedly proclaimed his innocence when interviewed by the Secret Service agent and when he appeared before the Commissioner, and since the check involved had a face value of $172.-79. Certainly, this court cannot presume that an indigent defendant, who is not shown to be knowledgeable about the law, has even heard of the Sixth Amendment, let alone understands its judgemade requirements with respect to waiver. United States v. Lustman 258 F.2d 475 (2d Cir.1958).

This court, therefore, holds that under the facts of this case defendant's Sixth Amendment right to a speedy trial has been violated.

The motion to dismiss is granted.

So ordered.