## Commonwealth v. Stewart

*Michael F. O'Brien,* for Commonwealth.

*Edward N. Popkin,* for defendant.

MONROE, J., December 17, 1970.—On January 14, 1968, defendant was arrested in this county on a complaint which alleged a violation, occurring on that date, of the Pennsylvania Drug Device and Cosmetic Act, "in that he did have in his possession; 4 capsules of purple color with a white fine powder; 2 double-scored buff colored pills in a cigarette pack of Newports." The complaint also alleged that he committed "Conspiracy, #302 violation-in that he did conspire to commit an illegal act." At the time of his arrest, defendant was, and still is, a resident of Pennington,

N. J. Defendant was promptly released upon bail and has remained released upon bail until the present time. Within one week after the arrest, counsel for defendant advised the justice of the peace before whom the complaint had been lodged that he represented defendant and requested that a hearing be fixed. Nevertheless, the justice of the peace did not hold a hearing on the charges lodged against defendant until May 9, 1969; the hearing was attended by defendant and his counsel. On July 25, 1969, the justice of the peace made a determination that the Commonwealth had presented a prima facie case against defendant; he thereupon held defendant for court and on August 4, 1969, filed with the clerk of court a transcript of the proceedings had before him.

On March 2, 1970, more than two years after the alleged offenses had been committed, the March Term Grand Jury of Bucks County approved a four-count bill of indictment charging that defendant and one William Michael Derkacs and one Joan E. Salbego did, on January 14, 1968:

1. "Unlawfully and willfully possess and have in their possession dangerous drugs, to wit, amphetamine, dextro-amphetamine, methamphetamine, desoxyephedrine, the same not having been obtained according to law;"

2. "Unlawfully and feloniously conspired and agreed with each other, and Shirley Ann Anderson a/k/a Deborah Orihel, a minor, to commit unlawful acts, to wit, to possess and have in their possession dangerous drugs, the same not having been obtained according to law."

3. "Being of the age of eighteen years and upwards unlawfully and feloniously permit a minor, to wit, Shirley Ann Anderson a/k/a Deborah Orihel of the age of seventeen assist in carrying of dangerous drugs

with intent to corrupt the morals of a child, Shirley Ann Anderson a/k/a Deborah Orihel, under the age of eighteen years."

4. "Being of the age of eighteen years and upwards unlawfully and feloniously permit a minor, to wit, Shirley Ann Anderson a/k/a Deborah Orihel of the age of seventeen years assist in carrying dangerous drugs, and tend to corrupt the morals of a child, to wit, Shirley Ann Anderson, a/k/a Deborah Orihel, under the age of eighteen years."

The indictment did not charge that defendant was not an inhabitant or usual resident of the State of Pennsylvania. On March 24, 1970, defendant filed with the clerk of court a motion to quash the indictment upon the grounds that it contained two counts, the third and fourth counts, charging criminal offenses which were not included in the complaint which had originally been filed against defendant, that the statute of limitations had run in favor of defendant prior to the approval of the bill of indictment and that a refusal to quash the indictment on the aforesaid grounds would constitute a violation of defendant's rights under the Constitution of the Commonwealth of Pennsylvania and the Constitution of the United States. The motion to quash did not attack the sufficiency of the averments of the third and fourth counts to allege criminal offenses, defendant interpreting them as charging him with the offenses of corrupting and tending to corrupt the morals of the child named therein.

The Commonwealth filed an answer to defendant's motion to quash but the motion was not set down for argument before the court en banc or for disposition by the court. Instead, on May 8, 1970, the district attorney presented to a different grand jury a second bill of indictment charging defendant, William Michael Kerzacs, and Joan E. Salbego in precisely the

same language as had been charged in the previous bill of indictment, with the exception that the second bill of indictment contained allegations to the effect that the accused were not inhabitants or usual residents of Pennsylvania during the period since January 14, 1968, and the third count as stated therein added the word "to" between the words "years" and "assist." The second indictment was approved by the May grand jury on May 8, 1970. On May 21, 1970, defendant filed a motion to quash both the indictment of March 2, 1970 and the indictment of May 8, 1970, for the same reasons as had been assigned in his motion filed March 24, 1970, to quash the first indictment.

The Commonwealth did not file an answer to the last above-mentioned motion of defendant to quash the two indictments until June 8, 1970, and it was then filed without leave of court. On June 17, 1970, defendant filed a motion to strike the Commonwealth's answer to his, defendant's, motion to quash the two indictments on the ground that the answer was not filed within seven days after filing of the motion to quash the indictments, as required by Rule 308 of the Rules of Criminal Procedure.

Argument was had before the court en banc on November 16, 1970, on defendant's motion of May 21, 1970, to quash both indictments and on his motion to strike the Commonwealth's answer filed June 8, 1970. Defendant's brief presented at the argument before the court en banc did not touch upon his motion to strike the Commonwealth's answer to his motion to quash the two indictments. However, defendant did briefly argue this point. We find nothing in the Pennsylvania Rules of Criminal Procedure which would authorize us to strike the Commonwealth's answer because of the Commonwealth's fail-

ure to file the same within seven days of the filing of defendant's motion to quash the indictments. Pa. R. Crim. P. 308 appears to us to be self-operating. It pertinently provides:

"(a) Answers may be filed not later than seven days after service of the pretrial application, except for good cause shown. Failure to answer shall be deemed an admission of the well pleaded facts averred in the application."

Commonwealth's answer was not filed within the required seven days. No cause is alleged therein or otherwise shown for such failure. Under the rule, it shall be considered tantamount to a failure to answer, with the consequence that the well-pleaded facts in defendant's motion to quash stand as admitted. Defendant, therefore, is not prejudiced by the answer.

Defendant has elected to treat the third and fourth counts of both bills of indictment as alleging indictable offenses, namely, corrupting the morals of a child and tending to corrupt the morals of a child. We are of the opinion that his objection to these counts as charging offenses not supported by the complaint lodged against him is well taken.

"The crime charged in an indictment need not be the identical crime charged in the information. The indictment is valid if it charges the commission of any crimes which are cognate to the one laid in the information: Commonwealth v. Ruff, 92 Pa. Superior Ct. 530, 536 (1928); Maginnis's Case, 269 Pa. 186, 195, 112 A. 555 (1921); Commonwealth ex rel. Tanner v. Ashe, 365 Pa. 419, 76 A.2d 210 (1950); Commonwealth v. Danner, 79 Pa. Superior Ct. 556, 558 (1922)." Commonwealth v. Dunnick, 204 Pa. Superior Ct. 58, 61 (1964). Although it is true that an information need not employ the legal phraseology or possess the technical accuracy of an indictment or describe

the crime as fully and as specifically as is there required, nevertheless:

"It is true that a complaint or information must contain all the essential elements of the offense sought to be charged, and, if it fails in this respect, it is not sufficient that the indictment supply them, because a defendant should not be required to answer a charge different from, and unrelated to, the one for which he was arrested and held to bail."

Commonwealth v. Musto, 348 Pa. 300, 302 (1944). See also Commonwealth v. Cortes, 182 Pa. Superior Ct. 602, 605 (1956); Commonwealth v. Karpinski, 3 D. & C. 2d 36 (1955), 4 Bucks 309; Commonwealth v. Miller et al., 7 Bucks 170, 185 (1957). The Act of Assembly of June 24, 1939, P. L. 872, sec. 532, as amended, 18 PS §4532, provides:

"Whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any child under the age of eighteen years, or who aids, abets, entices or encourages any such child in the commission of any crime . . . is guilty of a misdemeanor . . ."

The essential elements of the proscription appear to be (1) conduct by an adult of the age of 18 years and older; (2) with a child under the age of 18 years; (3) which corrupts or tends to corrupt the morals of such child, or (4) which aids, abets, entices or encourages such child in the commission of any crime. Compare Commonwealth v. Meszaros, 194 Pa. Superior Ct. 462 (1961). The accusatory allegations of the complaint have been recited in full at the opening of this opinion. None of the elements of the offenses of corrupting or tending to corrupt the morals of Shirley Ann Anderson, who is also known as Deborah Orihel, appear therein or anywhere in the complaint. The name of the alleged minor is not set forth in the com-

plaint. Her age is not mentioned and there is no indication whatsoever that anyone other than defendant was in possession of any drugs whatsoever. The complaint of conspiracy is a general allegation of an illegal conspiracy. In Commonwealth v. Petrillo, 338 Pa. 65, at 77, Chitty on Criminal Law, sec. 238, is quoted as stating:

"All indictments ought to charge a man with a particular offense and not with being an offender in general."

This statement may well be applied to the complaint of conspiracy lodged against this defendant. The deficiencies of the complaint are in no manner cured by the transcript of the justice of the peace. The only allegations therein with respect to the charges against defendant are:

"Violation of Act 4-Q Drug, Device and Cosmetic Act . . . Conspiracy, Violation #302."

There is no summary of the testimony at the justice of the peace hearing. There is nothing to indicate who was involved in the alleged conspiracy.

In view of the foregoing, we must sustain defendant's motion to quash the third and fourth counts of each indictment. He is not entitled to have the entirety of each indictment quashed by reason of the defects hereinabove considered.

The Act of March 31, 1860, P. L. 427, sec. 77, as amended, provides, inter alia, 19 PS §211:

"All indictments which shall hereafter be brought or exhibited for any crime or misdemeanor . . . shall be brought or exhibited within the time and limitation hereafter expressed, and not after; that is to say . . . all indictments and prosecutions . . . for all misdemeanors, . . . shall be brought or exhibited within two years next after such . . . misdemeanor shall have been committed: Provided, how-

ever, That if the person against whom such indictment shall be brought or exhibited, shall not have been an inhabitant of this State, or usual resident therein, during the said respective terms for which he shall be subject and liable to prosecution as aforesaid, then such indictment shall or may be brought or exhibited against such person at any period within a similar space of time during which he shall be an inhabitant of, or usually resident within this State: . . ."

Defendant alleges that because he was promptly arrested and immediately released upon bail and has continued in that status to the present time and because counsel entered his appearance promptly with the justice of the peace and promptly with the clerk of court upon return of the justice's transcript, he, defendant, is and always has been since his arrest "constructively within the grasp of Pennsylvania process," and the running of the statute of limitations is not tolled by reason of his residency in the State of New Jersey.

The statute of limitation begins to run from the date of the offense: Commonwealth v. Vivian, 16 Bucks 425 (1966). It is apparent, therefore, that unless the running of the statute had been tolled in this case, the statute would have completed its course prior to the approval of either bill of indictment by the grand juries of this county. The indictment of March 2, 1970, shows upon its face that more than two years had elapsed between its date and the date of the alleged crimes and the indictment not setting forth any facts bringing the case within the exceptions provided for, under the statute the indictment is fatally defective (Commonwealth v. Cody, 191 Pa. Superior Ct. 354 (1959); Commonwealth v. Vivian, supra), and the motion to quash the same will, therefore, be sustained.

Since the indictment of May 8, 1970, shows on its face that more than two years had elapsed between its date and the date of the alleged offenses but contains factual allegations tolling the statute of limitations, we must consider whether defendant's arguments that he has had constructive residency within the Commonwealth or has been constructively within the grasp of Pennsylvania process and, therefore, does not come within the exception noted in the statute have merit with respect to that indictment. Defendant has cited and acknowledges that Commonwealth v. Wilcox, 56 Pa. Superior Ct. 244, is the leading case holding that the statute is tolled as to nonresidents of the Commonwealth of Pennsylvania. In that case, the two defendants therein were never citizens of Pennsylvania; never maintained a residence therein and were never inhabitants of the State. At the time of the alleged offense, both were citizens of the State of New York. One of them, Wilcox, continuously maintained his residence in that State from the time of the commission of the offense to the time of trial. The remaining defendant, some time after the commission of the offense, and several years before the trial, removed from the State of New York to the State of Oklahoma, where he continued to reside and was engaged in business down to the time of the trial. The court held that these facts did not place defendants in the class defined by the exception in the statute, saying, page 250:

"Now it will be observed the statute uses no such expressions as 'fugitive from justice,' 'fleeing from prosecution,' 'concealing their place of abode,' etc. It makes no distinction between its own citizens and the citizens of any other state. It declares that the protection of the two-year enacting clause shall not be extended to anyone who, during the said period of two years following the commission of the offense, 'shall

not have been an inhabitant of this state or usual resident therein.' This is but another way of stating that those to whom the protection is given are persons, who, for a period of two years after the commission of the offense, are constructively at least within the grasp of its process."

Defense counsel argues that Commonwealth v. Turner, 176 Pa. Superior Ct. 32 (1954), is the star and compass pointing our way to the conclusion that defendant herein has been constructively within the grasp of Pennsylvania process and, consequently, that the statute has not been tolled. In Turner, defendant was, at the time of the commission of the offense, a resident of the State of Delaware and remained a resident of that State until the time of trial. However, daily he came to his place of employment in Delaware County, Pa., within the building and on the premises of his employer, the victim of his criminal act, from the date of the commission of the offense to the day of his trial. In effect, the Superior Court considered defendant Turner to be constructively a resident of Pennsylvania for the purposes of the statute. It said, page 37:

"If we are to hold that this case fell within the proviso tolling the statute of limitations, then under the circumstances of this case, when, if ever, would the statute operate as a bar to prosecution? Would a prospective defendant, after his day's work in Pennsylvania, instead of repairing to his usual residence across the state line, be required to establish domicile in Pennsylvania for two years after the commission of an act which he might fear would give our authorities reason to prosecute him in order to qualify as a 'usual resident' within the meaning of the act, and hold himself available for possible arrest? Or, assuming he continues his prior mode of residence and em-

ployment, in the alternative may he be confronted with an indictment twenty years later?"

It seems, however, that defendant is suggesting to us a false compass bearing. The situation before us is more akin to that in Wilcox than that in Turner. There is nothing in the record before us to show that defendant at any time was a citizen of the State or had a residence herein or was an inhabitant hereof or crossed the border from New Jersey into Pennsylvania or that Pennsylvania authorities were ever aware that at any time he entered the State of Pennsylvania except to attend the justice of the peace hearings. He filed written waiver of arraignment through his counsel. Wilcox has established the course we must follow. Any deviation therefrom, or new course, is to be set by the appellate courts, not by us. We therefore hold that the running of the statute of limitations has been tolled by reason of defendant's residency in the State of New Jersey.

Defendant next argues that the act in question is an illegal discrimination against citizens of other States and is forbidden by the United States Constitution, art. IV, sec. 2. This same argument was made in Commonwealth v. Wilcox, supra; the Superior Court decided it adversely to defendant, stating:

"So here we hold that the proviso to sec. 77 was not intended to discriminate and does not between citizens of a foreign state and citizens of Pennsylvania. It says to either and to both alike, if you have committed a misdemeanor within the portals of the state, you shall not be prosecuted after a period of two years, provided during that period you are an inhabitant or usual resident of the state. But it declares in the same voice, to both, that neither of you shall have the protection afforded by the statute if, during that period, you are not an inhabitant or usual resident of the Commonwealth."

We are bound by that decision.

Defendant's final argument is that a decision holding that the statute of limitations is not tolled as to him deprives him of the right to a speedy trial guaranteed to him by article I, sec. 9, of the Pennsylvania Constitution and by the Sixth Amendment to the United States Constitution. In U. S. v. Ewell, 383 U. S. 116, 86 S. Ct. 773, 15 L. Ed. 2d 627, (1966), the Supreme Court of the United States stated (page 120) that the right to a speedy trial exists to protect at least three basic demands of criminal justice: "to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself," and, quoting from opinions in its earlier decisions, said:

" ' The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' Beavers v. Haubert, 198 U. S. 77, 87. 'Whether delay in completing a prosecution . . . amounts to an unconstitutional deprivation of rights depends upon the circumstances . . . The delay must not be forceful or oppressive.' Pollard v. U. S., 352 U. S. 354, 361, '(T)he essential ingredient is orderly expedition and not mere speed': Smith v. U. S., 360 U. S. 1, 10."

A mere lapse of time is not enough to establish denial of a speedy trial: U. S. ex rel. Solomon v. Mancusi, 412 F.2d 88, 91, (1969); U. S. v. Dellago, 311 F. Supp. 227 (1970). In Commonwealth ex rel. Lowry v. Case, 17 Bucks 274, 279 (1967), President Judge Satterthwaite (Specially Presiding), speaking for this court, said:

". . . it has been said that the balance between the rights of public justice and those of the accused has been upset against the government only where the delay has been arbitrary, purposeful, oppressive or vexatious: (citing cases)."

Prejudicial or deliberate delay in securing an indictment may deprive a defendant of his constitutional rights, but the burden is on defendant to show to some extent the nature of the prejudice claimed: U. S. v. Coppola, 296 F. Supp. 903 (1969); U. S. ex rel. Solomon v. Mancusi, supra; U. S. v. Dellago, supra.

There are no allegations in defendant's motion to quash the indictment and nothing in the record to establish that such delay as there has been was arbitrary or purposeful on the Commonwealth's part or had been oppressive, vexatious or prejudicial to defendant. It does not presently appear that defendant's Federal Constitution Sixth Amendment rights have been violated. The constitutional guarantee in the Pennsylvania Constitution does not, in itself, warrant anything beyond a discharge from imprisonment where indictment or trial is delayed: Commonwealth ex rel. Smith v. Patterson, 409 Pa. 500 (1963). Since his arrest, defendant has been released on bail.

## ORDER

And, now, to wit, December 17, 1970, defendant's motion to quash the indictment approved by the grand jury on March 2, 1970, is sustained and the said indictment is quashed. Defendant's motion to quash the indictment found by the Grand Jury of Bucks County on May 8, 1970, is sustained as to the third and fourth counts thereof and said counts are dismissed and quashed, and the said motion is denied and refused as to the first and second counts of said indictment.

It is further ordered and directed that the Commonwealth shall list this case for trial not later than the March 1971 sessions of the criminal court of this county. Should it fail to do so, all charges shall be dismissed and defendant shall be discharged.